PROGRESSIVE GAMES,
INC., Plaintiff,

v.

SHUFFLE MASTER, INC.; Nevada Gaming Commission; Nevada State Gaming Control Board, Defendants.

No. CV–S–99–0573PMP(LRL).

United States District Court,
D. Nevada.

Aug. 4, 1999.

Robert E. Purcell, Jerry T. Kearns, Kirstin L. Stoll–DeBell, Reilly & Purcell, P.C., Denver, CO, Steve Lane, Hale Lane Peek Dennison Howard and Anderson, Las Vegas, NV, for Progressive Games, Inc., Plaintiff.

Edward O'Connor, Cary B. Johnson, Ernest W. Grumbles, Oppenheimer Wolff & Donnelly, LLP, Minneapolis, MN, Donald J. Campbell, J. Colby Williams, Campbell & Williams, Las Vegas, NV, for Shuffle Master, Inc., Defendant.

Frankie Sue Del Papa, Attorney General, Keith E. Kizer, Derek Harmer, Deputy Attorneys General, Attorney General's Office, Las Vegas, NV, for Nevada Gaming Commission and Nevada State Gaming Control Board, Defendants.

## ORDER

PRO, District Judge.

Currently before this Court is Plaintiff Progressive Games, Inc.'s ("Progressive") Memorandum of Points and Authorities in Support of Motion for Preliminary Inunction (Doc. # 5), filed on May 18, 1999. Governmental Defendants Nevada Gaming Commission and Nevada State Gaming Control Board filed an Opposition (Doc. # 20) on June 4, 1999. Defendant Shuffle Master, Inc. ("Shuffle Master") filed its Opposition (Doc. # 22) on June 9, 1999. Progressive filed a Reply to the Governmental Defendants' Opposition (Doc. # 37)on June 16, 1999. Progressive also filed a Reply to Shuffle Master's Opposition (Doc. # 42) on June 17, 1999.

This Court issued an Order for the Submission of Cited Authority (Doc. # 54) on July 15, 1999. Progressive filed a Response (Doc. # 58) on July 20, 1999. Shuffle Master filed a Reply to Plaintiff's Response (Doc. # 59) on July 22, 1999. Progressive filed a Motion to Strike Shuffle Master's Reply or in the Alternative Leave to File Surreply (Doc. # 60) on July 23, 1999.

## I. INTRODUCTION

This is the latest round of litigation between Progressive and Shuffle Master over patent ownership rights to a jackpot complement to live table poker games. Because of this Court's dismissal of the governmental Defendants from this lawsuit. Progressive's current Motion for Preliminary Injunctive Relief pertains solely to Defendant Shuffle Master.

## II. FACTS

Progressive Games is a subsidiary of the Mikohn Gaming Corporation. A large part of its core business involves the provision of live table card games and associated gambling apparatus to casinos. Progressive Games owns several federally registered patents generally directed at the methods and apparatus of including a jackpot component as a complement to live card games of chance (e.g., poker). The patents and claims at issue in this motion are as follows:

| U.S. Patent | Issue Date | Asserted Dependent Claims | Independent Claims |
|---|---|---|---|
| 5,584,485 ("the '485 patent") | Dec. 17, 1996 | 30 and 31 | 28 |
| 5,794,964 ("the '964 patent") | Aug. 18, 1998 | 38 | |
| 5,795,225 ("the '225 patent") | Aug. 18, 1998 | 5 and 20 | 1,4,11 |

While the jackpot patents can work in a number of embodiments and permutations, the general format is quite simple. In many live card games, players may participate by placing an ante bet. The players are then dealt a number of cards and permitted to make bets based upon their judgment and the strength of their cards. Progressive's patents, however, complement this familiar format. Under the jackpot patents, players may also make an optional, separate "jackpot" wager. A special optical sensor recognizes the placement of these optional wagers by individual players. Players who have made jackpot wagers and possess certain predetermined card combinations may win jackpot payouts. Progressive's most successful patented game, Caribbean Stud Poker, features a variant of five-card stud poker with a jackpot component.

The response to the jackpot patents from the gaming public has apparently been positive. Progressive has licensed its jackpot patents to a number of licensees nationwide. In Nevada, the company DP Stud. Inc. ("DP Stud") is the exclusive licensee authorized to lease and distribute Progressive's patented jackpot component with the Caribbean Stud Poker game. DP Stud currently leases 110 jackpot-equipped Caribbean Stud gaming tables in Nevada and collects roughly $1,300 per month from each of these tables.

Defendant Shuffle Master is a Minnesota company which is also involved in the provision of casino gaming devices and games. Its products include a variant of five-card poker called "Let It Ride." In the spring of 1995, Shuffle Master added its own jackpot component and associated electronic sensor apparatus to its poker game, naming this variant "Let It Ride–Tournament." Progressive sued Shuffle Master and other casino operations for patent infringement in Nevada, Mississippi and Connecticut. These lawsuits were consolidated by the Judicial Panel for Multidistrict Litigation in the United States District Court for the Southern District of Mississippi. This proceeding is currently subject to an indefinite stay, pending resolution of reexamination procedures by the federal Patent and Trademark Office ("PTO") respecting two of Progressive's patents not at issue in this suit.

Shuffle Master later created a second variant of its Let It Ride poker game. This variant did not have a tournament feature, but did retain the jackpot component. The jackpot-enhanced variant was named "Let It Ride–Bonus." Progressive immediately brought a patent infringement suit in the District of New Jersey to halt the use of this game as well. After considering oral argument and party submissions, United States District Judge Stanley S. Brotman enjoined the further operation of the Let It Ride–Bonus game. Subsequently, proceedings in this case were also transferred to the Southern District of Mississippi by the Judicial Panel on Multidistrict Litigation.

It is after these proceedings that Shuffle Master introduced another gaming product with an allegedly infringing jackpot component. This new game, called "Bahama Bonus," features a type of five-card stud poker that allegedly uses the same electronic apparatus used in connection with the Let It Ride–Bonus game. When playing Bahama Bonus, gamblers may place a separate, optional one-dollar wager to become eligible to win "bonus" or jackpot payments, dependent on the card combinations they are dealt.

On May 13, 1999, Shuffle Master received permission from the Nevada Gaming Control Board to operate a single field test table of the jackpot-equipped Bahama Bonus game in the MGM Grand Hotel and Casino in Las Vegas, Nevada. Progressive alleges that, in the absence of injunctive relief, Shuffle Master will secure the necessary approvals for the widespread commercial distribution of the allegedly infringing Bahama Bonus game throughout Nevada. As a result, Progressive has moved this Court for injunctive relief ordering Shuffle Master and those parties in active concert with it to refrain from infringing or inducing others to infringe its jackpot patents through the production, sale, offering for sale, or use of the Bahama Bonus casino game.

## III. DISCUSSION

■ The decisions of the Federal Circuit will usually govern a district court's disposition of substantive issues unique to patent law. *See Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1451 n. 12 (Fed.Cir. 1988). However, as a preliminary matter, the Court must emphasize that its findings here are in no way bound by the Federal Circuit's decision in *Progressive Games, Inc. v. Boardwalk Regency Corp.*, No. 98–1589 (Fed.Cir. Oct. 27, 1998) (attached to Pl.'S Resp., Doc. # 58). In Progressive's submissions, it was intimated that the Federal Circuit might have construed the breadth of Progressive's patents claims, issues which lie at the heart of this request for preliminary injunction. Hence, this Court issued an Order (Doc. # 54) requesting the submission of the cited decision.

The background to this Federal Circuit decision is somewhat complicated. In August of 1998, Progressive sought a preliminary injunction against Caesars Atlantic City in the District of New Jersey concerning the use of the Let It Ride–Bonus game developed by Shuffle Master. After construing some of the same claims at issue in this proceeding (Claims 28,30, and 31 of the '485 patent), the court in New Jersey entered an order preliminarily enjoining Caesars from using the Let It Ride–Bonus tables on the grounds of a reasonable likelihood of a finding of patent infringement.

■ Almost simultaneous with the issuance of the injunction, the Judicial Panel on Multidistrict Litigation transferred the New Jersey action to the Southern District of Mississippi, where other related lawsuits were pending. "Without a hearing on the merits and without setting forth reasons," the court in Mississippi issued an order staying the New Jersey court's preliminary injunction. *Boardwalk Regency Corp.*, No. 98–1589 at 3–4. Progressive appealed to the Federal Circuit, seeking a restoration of the injunction issued by the New Jersey court, pending a decision by the Mississippi district court on Caesar's motion for reconsideration. *See id.* at 4. The Federal Circuit granted Progressive's "urgent motion" for restoration, on the grounds that the Mississippi court, in staying the preliminary injunction: (1) seemed to have addressed a patent different to that actually at issue in the litigation; (2) improperly failed to provide findings or conclusions with regards to the disputed patent claim; and (3) relied upon an entirely inapposite doctrine of patent law. *See id.* at 5–6. The Federal Circuit stated,

nevertheless, that its decision to restore the New Jersey injunction did not "prejudg[e] the ultimate merits" of the patent case (i.e., did not reach the merits of the New Jersey district court's claim construction analysis). *See id.* at 6. Accordingly, this Court is free to conduct its own independent claim construction analysis of the disputed patents.[1]

■ Before issuing a preliminary injunction under 35 U.S.C. § 283, this Court must examine: (A) the movant's reasonable likelihood of success on the merits; (B) the irreparable harm the movant will suffer if preliminary relief is not granted; (C) the balance of hardships; and (D) the adverse impact on the public interest. *See Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1555 (Fed.Cir.1994). The movant will bear the burden of proving entitlement to relief. *See id.* While the factors must be weighed against one another, the likelihood of success and irreparable harm factors are "central to the movant's burden." *Sofamor Danek Group, Inc. v. DePuy–Motech, Inc.*, 74 F.3d 1216, 1219 (Fed.Cir. 1996).

### A. Likelihood of Success on the Merits

■ To demonstrate a likelihood of success on the merits of its case, a patent owner must "clearly show" that its patent is valid, enforceable, and infringed. *See Nutrition 21 v. United States*, 930 F.2d 867, 869 (Fed.Cir.1991).

#### 1. Validity

■ Issued patents are presumed to be valid. *See* 35 U.S.C. § 282. However, in

the context of requests for injunctive relief, the alleged infringer may shift the burden back to the patentee upon the presentation of "substantial evidence" of invalidity. *See Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1364 (Fed.Cir. 1997); *New England Braiding Co., Inc. v. A.W. Chesterton Co.*, 970 F.2d 878, 882 (Fed.Cir.1992). Such evidence is absent in this case.

■ First, Shuffle Master alleges that "[m]any of the claims at issue in this suit are anticipated by [a prior invention called] Casino Poker." (Def.'s Opp., Doc. # 22, at 32) A basic requirement for patentability is novelty. *See* 35 U.S.C. §§ 102, 103. An "anticipated" or unoriginal invention cannot be patented and will be found invalid. *See Kegel Co., Inc. v. AMF Bowling, Inc.*, 127 F.3d 1420, 1429 (Fed.Cir.1997). But a showing of anticipation "requires the presence in a single prior art reference disclosure of each and every element of the claimed invention, arranged as in the claim." *Lindemann Maschinenfabrik GMBH v. American Hoist and Derrick Co.*, 730 F.2d 1452, 1458 (Fed.Cir.1984) (citations omitted). Here, Shuffle Master's submissions are devoid of any element by element analysis of the alleged replication of the Casino Poker patent by any of the disputed claims. The bare allegations submitted in its stead fall far short of satisfying the substantial evidence standard.

■ For similar reasons, Shuffle Master's allegations of "obviousness" also lack

---

1. This Court will decline, however, Shuffle Master's invitation to sanction Progressive for its misinterpretation of the Federal Circuit decision. Under Federal Rule of Civil Procedure 11, a district court may sanction a party for arguments without reasonable foundation in fact or law. However, Rule 11 sanctions are not warranted where the other side's position is merely plausible but incorrect. *See* William W. Schwarzer, A. Wallace Tashima, James M. Wagstaffe, Federal Civil Procedure Before Trial § 17:15.2, at 17–10 (1999). The

*Boardwalk* decision is somewhat complex in nature. An apparently unintentional misunderstanding of a decision does not rise to the level of sanctionable conduct. *See generally* Fed.R.Civ.P. 11 advisory committee's note. Accordingly, this Court will deny Shuffle Master's request for Rule 11 sanctions asserted in its Reply to Plaintiff's Response (Doc. # 59). On the same grounds, this Court will also deny Plaintiff's Motion to Strike or, In the Alternative, Motion for Leave to File Surreply (Doc. # 60).

the support of sufficient evidence. A patent is invalid if its allegedly inventive characteristics and elements could be readily deduced from publicly available material by a person of ordinary skill in the art at the time of its invention. *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 150, 109 S.Ct. 971, 103 L.Ed.2d 118 (1989). Demonstration of obviousness will depend *inter alia* upon a showing of the level of ordinary skill in the prior art and the differences between the claimed invention and the prior art. *See Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); *Miles Labs., Inc. v. Shandon Inc.*, 997 F.2d 870, 877 (Fed.Cir.1993). Shuffle Master again, however, does not proffer any evidence or side-by-side analysis of the disputed inventions. Accordingly, Progressive may rely upon the presumption of patent validity.

## 2. Enforceability

■ The presumption of validity will likewise modify the patentee's burden in demonstrating enforceability. At trial, the infringer will bear the burden of proving inequitable conduct. *See FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1414–15 (Fed.Cir.1987). Thus, in the context of a motion for preliminary injunction, the patentee can prevail merely "by showing that a defendant's evidence of inequitable conduct would not likely carry the day clearly and convincingly at trial." *CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*, 893 F.Supp. 508, 514–15 (D.Md.1995). Analysis of Shuffle Master's inequitable conduct arguments falter under this metric.

### a. Tainted Chain of Applications

■ First, Shuffle Master contends that the jackpot patents at issue have been "tainted" by Progressive's allegedly inequitable conduct in its acquisition of an earlier patent directed at the casino and cardroom game components of Carribean Stud poker. Inequitable conduct, which may serve as a defense to a charge of infringement, includes acts such as the failure to disclose material information, the submission of false material information, or the misrepresentation of relevant information to the PTO. *See Regents of the University of California v. Eli Lilly & Co.*, 119 F.3d 1559, 1570 (Fed.Cir.1997). Such behavior as to one claim will invalidate not only the entire patent, *see Kingsdown Medical Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 874–75 (Fed.Cir.1988), but may also render unenforceable all subsequent claims which spring from the same or a related application. *See Fox Industries, Inc. v. Structural Preservation Systems, Inc.*, 922 F.2d 801, 803–04 (Fed.Cir.1990).

Shuffle Master argues that Progressive intentionally and fraudulently filed false documents in connection with its earlier '553 patent application. These documents incorrectly described Casino Poker, a listed prior art, as featuring a one-to-one payout structure. (*See* '553 Patent History, attached as Ex. B to Pl.'s Opp., Doc. # 42, at 42–43, 63–79, 88–92, 93–97.) Casino Poker, in fact, offered bonuses ranging from three to ten times the amount wagered on a player's ante and follow-up bet. (Casino Poker Rules, attached as Ex. C to Pl.'s Opp., Doc. # 42.) Shuffle Master contends that this allegedly intentional omission taints the jackpot patents at issue in this Motion and renders them unenforceable.

This argument, however, is misplaced in light of the Federal Circuit's decision in *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1329 (Fed.Cir.1998). There, the patentee filed an application which included several separately patentable inventions. As a result, the PTO issued a restriction requirement under 35 U.S.C. § 121 and divided the claims. *See id.* at 1331. The *Baxter* court held that where a divisional

application subsequently separates claims from those tainted by inequitable conduct, a patent that descends from a divisional or continuation application and is unrelated to the omitted information will be enforceable, notwithstanding any inequitable conduct committed in connection with the "parent" application. *See id.* at 1332.

■ This is precisely the configuration presently before this Court. Like the situation in *Baxter,* here the PTO issued a restriction requirement, stating that the '553 application actually contained two "patentably distinct" species of the claimed invention: (1) the casino and cardroom game species (claims 1–35) and (2) the progressive jackpot game species (claims 36–46). (Ex. B at 48.) As a result, the jackpot claims (claims 36–46) were withdrawn and prosecuted separately, leaving only the game claims (claims 1–25) for prosecution under the '553 application. (*See id.* at 48–49.) Shuffle Master's contentions of inequitable conduct rely solely on the allegedly fraudulent omission of Casino Poker's bonus characteristics proffered as part of its game play claims (viz., the multiplying of amounts wagered by players on their ante and follow-up bets that make up the traditional poker betting format). Yet perusal of the cross-reference information of the '485, '964, and '225 patents reveal a descent in the chain of applications from the separated *jackpot* component (claims 36–46) of the '553 application. (Patents, attached as Exs. 1–3, Pl.'s Mot. for S.J., Doc. # 5.) Thus, the allegedly tainted game play components of the '553 application are not the material antecedents to the jackpot claims and cannot besmirch their enforceability. *See Fox,* 922 F.2d at 803. Quite simply, the jackpot and game play lines of patents make up two conceptually distinct branches of descent.

**b. Alleged Inequitable Conduct in the Jackpot Patent Applications Themselves**

■ Similar problems disable Shuffle Master's claims that Progressive committed inequitable conduct directly in the prosecution of its '485, '964, and '225 applications. Shuffle Master alleges that the same documents filed in the '553 application, incorrectly describing Casino Poker as a live poker game issuing one-to-one payouts for ante and follow-up bets, were fraudulently submitted to the PTO in connection with the jackpot patents. When faced with allegations of the direct commission of fraud, a district court must determine whether the withheld information meets a threshold standard of materiality and intent to mislead. *See Akron Polymer Container Corp. v. Exxel Container, Inc.,* 148 F.3d 1380, 1383 (Fed.Cir.1998). Once the threshold levels of materiality and intent have been met, the court must then weigh these two factors and determine, in its exercise of equitable discretion, whether any inequitable conduct has occurred. *See Halliburton Co. v. Schlumberger Tech. Corp.,* 925 F.2d 1435, 1439 (Fed.Cir.1991). The more material the omission, the less evidence of culpable intent is required, and vice versa. *See N.V. Akzo v. E.I. Dupont de Nemours,* 810 F.2d 1148, 1153 (Fed.Cir. 1987). "Information is 'material' when there is a substantial likelihood that a reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent." *Elk Corp. of Dallas v. GAF Bldg. Materials Corp.,* 168 F.3d 28, 31 (Fed.Cir.1999) (citation omitted).

■ Where false or misleading affidavits or documents are submitted to overcome a prior art rejection by a patent examiner, the requisite materiality may be presumed. *See Rohm & Haas Co. v. Crystal Chemical Co.,* 722 F.2d 1556, 1570 (Fed.Cir.1983); *Refac Int'l, Ltd. v. Lotus Development Corp.,* 81 F.3d 1576, 1584 (Fed.Cir.1996). This is not, however, the case here. Reference to the prosecution history of the '553 patent reveals that the incorrect documents overcame the examiner's objections to the *game play* compo-

nents of the '553 patent, not the jackpot patents at issue in this motion. (Ex. B at 47–51). In the absence of any applicable presumptions, this Court must exercise its discretion in order to determine the materiality of submitted documents. *See Halliburton,* 925 F.2d at 1439. Here, this Court finds Progressive's omission of the bonus feature of the game play component of the card game to be completely irrelevant to the jackpot patents. The jackpot patents deal with the various mechanical and electronic components of the claimed inventions (e.g., sensors capable of recognizing the placement of gaming tokens; electronic controllers that track the placement of jackpot contributions; and manually operated lock-out switches) and the payout structures for jackpot bets. ('964 Patent Claim 32, attached as Ex. M, Def.'s Opp., Doc. #22; '225 Patent Claim 9, attached as Ex. N, Def.'s Opp., Doc. #22.) The references to the gaming play components are only of the most generic nature and do not reference the amount paid out in game play bonuses (i.e., on non-jackpot bets). Accordingly, Progressive has met its burden to show that clear and convincing evidence of its inequitable conduct is unlikely to issue during trial. *See Custom Optical Frames,* 893 F.Supp. at 518.

### 3. Infringement

When analyzing an allegation of patent infringement, a district court must first construe the meaning and scope of the disputed patent claims and then compare those construed claims to the accused device or process. *See Novo Nordisk of North America, Inc. v. Genentech, Inc.,* 77 F.3d 1364, 1368 (Fed.Cir.1996) (citation omitted). In construing the patent claim, a district court may consider the available intrinsic evidence such as the claims themselves, the patent's specifications, and the prosecution history. *See Bell & Howell Document Management Prods. Co. v. Altek Sys.,* 132 F.3d 701, 705 (Fed.

Cir.1997). "Although words in a claim are generally given their ordinary and customary meaning, a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history." *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir.1996) (citations omitted).

Here, Progressive contends that Shuffle Master has infringed specific portions of its patents. The pertinent dependent and independent claims are as follows:

*'485 Patent:*

28. A method of including a jackpot component in a live casino poker card game, comprising the steps of:

- providing a gaming table including a plurality of player locations at which players receive cards from a dealer playing said live casino card game;

- providing a human dealer;

- affording a player an opportunity to optionally place a second wager to participate in the jackpot component;

- electronically recognizing placement of said second wager at said player locations on said gambling table;

- dealing a hand of playing cards to the player

- determining whether the player's hand comprises a pre-determined winning arrangement of cards; and

- paying to a winning player having a predetermined winning arrangement of cards a preselected payoff amount for said jackpot component dependent on the poker rank of the winning player's hand, only if the winning player opted place said second wager.

30. The method of claim 28, wherein said step of paying to a winning player comprises paying to a winning player

one of a plurality of predetermined winning arrangement of cards, each of said predetermined winning arrangements of cards comprising a poker hand and the corresponding fixed preselected payoff amount for a higher ranked poker hand being greater than the corresponding fixed preselected payoff amount for a lower ranked poker hand.

31. The method of claim 28, further comprising the steps of:

- providing at least one light on said table at each player location for indicating placement of said second wager; and

- indicating placement of said second wager by a player by illuminating the light at the player's location.

### '964 Patent:

38. In a live casino card game table, said table having a plurality of player locations at which a player receives playing cards from a dealer to play said live casino table card game;

- a plurality of sensors, one senor associated with a corresponding one of said player locations, for sensing placement of a gaming token wagered by a player; and

- a plurality of light indicators, one indicator associated with a corresponding one of said player locations, for visually indicating that a player has wagered a gaming token.

### '225 Patent:

1. A method of including a jackpot component as an additional feature in a live casino table card game comprising the steps of:

(a) a player making a first wager to participate in the live casino table card game;

(b) a player optionally making a second wager to participate in said jackpot component;

(c) a dealer dealing playing cards to the player; and

(d) if the payer's hand comprises a predetermined arrangement of cards, the player wins a predetermined prize if the player has optionally made the second wager, wherein the steps (a) and (b) occur prior to step (c) and step (c) occurs prior to step (d), and wherein said predetermined arrangement and said predetermined prize are each determined before steps (a) and (b).

4. The method of claim 1, wherein said predetermined prize is at least 100 times the amount of said second wager.

5. The method of claim 4, wherein said predetermined arrangement consists of a royal flush poker rank.

11. A method of including a jackpot component as an additional component as an additional feature in a live casino table card game, said table including a plurality of player locations at which a player received playing cards from a dealer to play said live casino table card game, comprising the steps of:

(a) permitting a player to make a first wager to participate in said live casino table card game;

(b) affording a player an opportunity of making a second wager to participate in said jackpot component;

(c) electronically registering placement of said second wager by a player

(d) electronically displaying a signal at the player location to indicate placement of said second wager;

(e) dealing a hand of playing cards to the player; and

(f) if the player's hand comprises a predetermined arrangement of cards and the player has made the second wager, awarding a prize to the player.

20. The method of claim 11, wherein said prize is a predetermined fixed amount.

According to both parties, the infringement determination will turn upon how the Court interprets the phrase "jackpot component" in the '485 and '225 patents.[2] If, as Shuffle Master contends, the term refers solely to a "progressive jackpot" (i.e. a bonus payment where unwon wagers carry over to subsequent hands), the disputed invention is not infringing since the Bahama Bonus game merely features fixed cash payouts that do not aggregate from hand to hand. In contrast, if the term "jackpot component" refers to any regime featuring separate cash payments (whether they be fixed or cumulative) as Progressive Games contends, then the Bahama bonus game would infringe the '485 and '225 patents.

It is true that, as Shuffle Master contends, the specifications set forth in the invention background and preferred embodiment sections of the '485 and '225 patents frequently use the term "progressive jackpot." However, it is well-established that claims are generally not limited by references or preferred embodiments in the patent specification. *See, e.g., American Permahedge, Inc. v. Barcana, Inc.,* 105 F.3d 1441, 1444 (Fed.Cir.1997) ("Claims, not the specification embodiments, define the scope of the protection."); *Laitram Corp. v. Cambridge Wire Cloth Co.,* 863 F.2d 855, 865 (Fed.Cir. 1988). The preferred embodiments are only the most desired permutation of the invention. Thus, a district court facing a claim of literal infringement must eschew the commercial or preferred embodiments of an invention and instead examine the particular patent claims at issue. *See Martin v. Barber,* 755 F.2d 1564, 1567 (Fed.Cir.1985). Like the court in the District of New Jersey, this Court finds the disputed claims to also protect fixed jackpot payouts.

First, perusal of the text of the disputed claims indicates that Progressive patented the very type of fixed jackpot awards featured in Shuffle Master's game. Dependent claim 30 of the '485 patent, for example, patents the issuance of a "fixed preselected payoff amount" that corresponds to the type of winning poker hand held by a player. Similarly, dependent claim 20 of the '225 patent sets forth rights to an electronically-aided poker game "wherein said prize [for an additional jackpot wager] is a predetermined fixed amount." Nowhere within the asserted claims does the word "progressive" or any equivalent terminology appear. Indeed, the insertion of the term "progressive jackpot" into these claims would lie entirely in opposition to the references of predetermined, unvarying payouts.

Second, this Court finds it compelling that even the preferred embodiment evinced in the patent specifications feature fixed cash payouts, notwithstanding the use of the term "progressive jackpot." The '225 Patent, for example, specifies preferred poker game embodiments whereby top card combinations are awarded percentages of a progressive (i.e., aggregated jackpot), whereas lower hands such as a full house or a four of a kind are awarded

---

**2.** For purposes of the infringement analysis, this Court will consider only those arguments and defenses raised by Shuffle Master in its Opposition to Motion for Preliminary Injunction (Doc. # 22). Under the Local Rules of Practice of the District of Nevada, memoranda of points and authorities submitted in opposition to a party's motion must conform to a thirty-page limitation in length and a strict double-spaced format (save for exhibits, quotations, captions, the title of the court, and the name of the case). See LR 7–4, 10–1. The main body of Shuffle Master's Opposition (Doc. # 22) had already violated these provisions by presenting thirty-six pages of text which, in certain sections, presents pages of dense, single-spaced text. Shuffle Master further requests that this Court review an additional attached fifty-six page brief if it "[chose] to analyze the infringement question." (Opp., Doc. # 26, at 36.) A district court may impose any appropriate sanction on parties who fail to adhere with the Local Rules. See LR IA 4–1. This Court will accordingly disregard the attached brief, Exhibit Q.

preset, unvarying numbers of tokens. ('225 Patent, col. 5, lns. 22–55) The '964 Patent evinces a similar regime that encompasses the use of both progressive and fixed amount jackpot awards. ('964 Patent, col. 5, lns. 21–43) Thus, it is clear from the intrinsic evidence that Progressive's '225 and '964 patents protect both progressive (i.e., aggregate) and fixed-amount jackpot payments. Hence, this Court finds that there is a strong likelihood of a finding of infringement.

This Court is unconvinced by Shuffle Master's contention that a narrow interpretation of the term jackpot component is required by allegedly contrary statements made by Progressive in an earlier, separate infringement proceeding. A patentee is not precluded from taking a position in a subsequent action for infringement inconsistent with its position in a prior action, if the opposing party in the subsequent action fails to establish things such as personal reliance on the decision in the prior suit or the patentee's apparent misuse of court. *See Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1453 (Fed.Cir.1988). Such is the case here.

## B. Irreparable Harm

■ A "clear showing" of patent validity and infringement will raise the presumption of irreparable harm. *See Bio–Technology General Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1558 (Fed.Cir.1996). Like any presumption, a presumption of irreparable harm may be overcome by the facts in the record. *See Rosemount, Inc. v. United States Int'l Trade Comm'n*, 910 F.2d 819, 822 (Fed.Cir.1990). Here, Progressive will benefit from this presumption due to Shuffle Master's failure to submit any evidence in rebuttal.

## C. Balance of Hardships

■ A preliminary injunction in the context of patent infringement suits is a drastic remedy and should not be granted lightly. *See Intel Corp. v. ULSI System Technology, Inc.*, 995 F.2d 1566, 1568 (Fed.Cir.1993). Thus, a court should weigh the relative hardships upon the parties. Factors to be considered include the effect on the patentee's market share, business reputation, and goodwill, as well as the parties' relative size. *See, e.g., Bell & Howell Document Management Prods. Co. v. Altek Systems*, 132 F.3d 701, 708 (Fed.Cir.1997); *Illinois Tool Works, Inc. v. Grip–Pak, Inc.*, 906 F.2d 679, 684 (Fed. Cir.1990).

■ Here, while Shuffle Master's presence in Nevada is currently limited to a single field test table in the MGM Grand Hotel and Casino in Las Vegas, Progressive has presented evidence that Shuffle Master's Bahama Bonus game will be marketed in Nevada at rates half that of those assessed by Progressive on its casino customers. (Charles H. McCrea Decl., filed as Ex. 7 of Doc. # 42a) Progressive has also submitted evidence indicating that the wider release of Shuffle Master's allegedly infringing invention would have an extremely invidious affect upon its business goodwill and drastically cut the market share of its exclusive licensee in Nevada, due to the markedly lower rates assessed by Shuffle Master. (*Id.*) In opposition, Shuffle Master has utterly failed to present any evidence that it would be harmed by the issuance of an injunction. Accordingly, the balance of hardships factor weighs in Progressive's favor as well.

## D. Public Interest

■ "Typically, in a patent infringement case, although there exists a public interest in protecting rights secured by valid patents, the focus of the district court's public interest analysis should be whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Hybritech*, 849

F.2d at 1458. Neither party has sighted the possibility of harm to any public interest upon the issuance of an injunction.

## IV. CONCLUSION

In view of the aforementioned criteria, this Court finds that Progressive has satisfied its burden in demonstrating its entitlement to injunctive relief.

IT IS THEREFORE ORDERED that Plaintiff Progressive Games, Inc.'s Motion for Preliminary Injunction (Doc. # 5) is granted with respect to Defendant Shuffle Master, Inc. Defendant Shuffle Master, Inc., is hereby enjoined from infringing or inducing others to infringe Plaintiff Progressive Games, Inc.'s patents through the construction, sale, offering for sale, or use of a casino table game known as Bahama Bonus.

IT IS FURTHER ORDERED that Plaintiff Progressive Games, Inc., in accord with Rule 65(c) of the Federal Rules of Civil Procedure, shall secure the Preliminary Injunction by posting with the Clerk of Court a bond in the amount of $25,000 on or before August 9, 1999.

IT IS FURTHER ORDERED that Shuffle Master, Inc.'s request for Rule 11 Sanctions, asserted in its Reply to Plaintiff's Response to July 15, 1999 Order (Doc. # 59) is DENIED.

IT IS FURTHER ORDERED that Progressive Games, Inc.'s Motion to Strike or, in the Alternative, Motion for Leave to File Surreply (Doc. # 60) is DENIED.