**REEBOK INTERNATIONAL LTD.,**
Plaintiff–Appellant,

v.

**J. BAKER, INC., Defendant–Appellee.**

No. 94–1145.

United States Court of Appeals,
Federal Circuit.

Aug. 15, 1994.

---

David K.S. Cornwell, Sterne, Kessler, Goldstein & Fox, Washington, DC, argued, for plaintiff-appellant. With him on the brief were Tracy–Gene G. Durkin and William C. Allison, V.

David Wolf, Wolf, Greenfield & Sacks, P.C., Boston, MA, argued, for defendant-appellee. Of counsel was Donald R. Steinberg.

Before MICHEL and LOURIE, Circuit Judges, and CARMAN, Judge.*

MICHEL, Circuit Judge.

Reebok International Ltd. (Reebok) appeals the December 29, 1993 order issued by the United States District Court for the District of Massachusetts denying Reebok's motion for a preliminary injunction. Because the district court did not clearly err in finding that Reebok will not suffer irreparable harm due to the denial and did not abuse its discretion in denying the motion, we affirm. Although the court erred by not making findings on likelihood of success while still denying Reebok the presumption of irreparable harm it may have been entitled to had such findings been made, on this record that error was harmless. Defendant's evidence was sufficient to rebut such a presumption.

## BACKGROUND

On December 7, 1993, design patent, U.S. Patent No. Des. 341,931 (the '931 patent) for "Shoe Upper" issued to Reebok. The patent protects the design of an athletic shoe, exclusive of the sole, which Reebok's SHAQ I model shoe embodies. On the issue date, Reebok filed a complaint alleging that J. Baker, Inc. (Baker) infringed the '931 patent by making, using or selling its Olympian model athletic shoe. Reebok also filed a

motion for a temporary restraining order, which was denied, and a motion for a preliminary injunction requesting that the district court enjoin Baker from making, using or selling the Olympian model shoe. At the preliminary injunction hearing, several facts were established.

Baker began manufacturing and selling the Olympian model shoe in July, 1993, although Reebok did not learn of the Olympian model until November, 1993. By December 7, 1993, the date Reebok filed its complaint, Baker had discontinued production of the Olympian model, but approximately 33,000 pairs of the shoe remained in stock.

Reebok began manufacturing the SHAQ I model shoe in November, 1992. To promote the SHAQ I shoe, Reebok undertook an extensive advertising campaign featuring the popular pro basketball player, Shaquille O'Neal. However, by the date the '931 patent had issued and Reebok had filed its complaint, Reebok had discontinued production of the SHAQ I model. Moreover, by December, 1993, Reebok no longer promoted the SHAQ I model shoe because the company had replaced the SHAQ I with the SHAQ II model[1] for reasons unrelated to Baker's alleged infringement.

On December 29, 1993, the district court denied Reebok's motion for a preliminary injunction. The order explained:

> After hearing on Plaintiff Reebok International Ltd.'s Motion for Preliminary Injunction, the Court denies same on the ground that the Plaintiff has failed to establish irreparable harm. In that the alleged infringing sneakers and the alleged infringed sneakers[2] are no longer being produced, in that the design patent was issued only on December 7, 1993, *after* the alleged infringed sneakers' production was discontinued, and in that only 30,000 pairs

---

* Judge Gregory W. Carman of the United States Court of International Trade, sitting by designation.

1. The Olympian model shoe is not alleged to infringe any design patents protecting the SHAQ II model shoe.

2. The district court improperly referred to the "infringed sneakers," meaning the SHAQ I shoes, rather than the infringed patent claim of the design patent and the shoe embodying that claim.

of the alleged infringing sneakers are available for sale, the actual damages sustained by the Plaintiff can be calculated with exact certainty.

Even though the case remains untried, Reebok appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (1988).

## STANDARD OF REVIEW

■ A trial court's decision whether to issue a preliminary injunction is discretionary. When a preliminary injunction is denied, to obtain reversal the movant must show not only that one or more of the findings relied on by the district court was clearly erroneous, but also that denial of the injunction amounts to an abuse of the court's discretion upon reversal of erroneous findings. *New England Braiding Co., Inc. v. A.W. Chesterton Co.*, 970 F.2d 878, 882, 23 USPQ2d 1622, 1625 (Fed.Cir.1992). An appeal from a denial of a preliminary injunction based on patent infringement involves substantive issues unique to patent law and, therefore, is governed by the law of this court. *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1451 n. 12, 7 USPQ2d 1191, 1195 n. 12 (Fed.Cir.1988).

## ANALYSIS

■ Injunctive relief in patent cases is authorized by 35 U.S.C. § 283 (1988). Whether a preliminary injunction should issue turns upon four factors: (1) the movant's reasonable likelihood of success on the merits; (2) the irreparable harm the movant will suffer if preliminary relief is not granted; (3) the balance of hardships tipping in its favor; and (4) the adverse impact on the public interest. *Hybritech*, 849 F.2d at 1451, 7 USPQ2d at 1195; *New England Braiding*, 970 F.2d at 882, 23 USPQ2d at 1625. The burden is always on the movant to show entitlement to a preliminary injunction. *H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 388, 2 USPQ2d 1926, 1928 (Fed.Cir.1987).

### A. Likelihood of Success on the Merits

Although the district court made no findings regarding Reebok's likelihood of success on the merits of its infringement claim, Reebok argues for reversal on the ground that it has shown a reasonable likelihood of success. Baker counters that the record would support our independently finding that the '931 patent is invalid and not infringed and, therefore, Reebok has not shown likelihood of success.

■ A reasonable likelihood of success requires a showing of validity and infringement. *Hybritech*, 849 F.2d at 1451, 7 USPQ2d at 1195. Deciding whether Reebok has demonstrated a reasonable likelihood of success would require us to make factual findings and decide a factual issue in the first instance, tasks which we, as an appellate court, may not undertake. *See Oakley, Inc. v. International Tropic–Cal, Inc.*, 923 F.2d 167, 169, 17 USPQ2d 1401, 1403 (Fed.Cir. 1991) ("We cannot make the necessary factual findings relating to infringement at the appellate level."). Consequently, we must review the district court's denial of a preliminary injunction without the aid of any finding regarding this important factor.

Although it is always preferable that a district court make findings regarding each of the four factors which weigh in the balance concerning whether to deny a preliminary injunction, *see Nutrition 21 v. United States*, 930 F.2d 867, 869, 18 USPQ2d 1347, 1349 (Fed.Cir.1991) ("Sufficient factual findings on the material issues are necessary to allow this court to have a basis for meaningful review."), the incompleteness of relevant findings here does not necessarily require that we vacate the district court's order and remand for further fact finding. *Cf. Oakley*, 923 F.2d 167, 17 USPQ2d 1401 (vacating preliminary injunction based on conclusion that trial court's findings supporting the grant were so limited that meaningful review was not possible).

■ A movant seeking a preliminary injunction must establish a reasonable likeli-

hood of success on the merits both with respect to validity and infringement of its patent. *Hybritech,* 849 F.2d at 1451, 7 USPQ2d at 1196. The movant is also required to establish that it will suffer irreparable harm if the preliminary injunction is not granted. *Id.* at 1456, 7 USPQ2d at 1199. Thus, a movant cannot be granted a preliminary injunction without findings by the district court that the movant carried its burden on *both* factors.

#### (i) Relationship to Other Factors

■ If a preliminary injunction is denied, the absence of an adequate showing with regard to any one of the four factors may be sufficient, given the weight or lack of it discretionarily assigned the other factors by the trial court, to justify the denial. *Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.,* 908 F.2d 951, 953, 15 USPQ2d 1469, 1471 (Fed.Cir.1990). Because, irrespective of relative or public harms, a movant must establish both a likelihood of success on the merits *and* irreparable harm (keeping in mind the burden shifting rule discussed below), the district court may deny a preliminary injunction based on the movant's failure to establish either of these two crucial factors without making additional findings respecting the other factors. Thus, in *New England Braiding* we affirmed the denial of a preliminary injunction even though the district court did not make findings respecting irreparable harm, the balance of hardships and public interest because the district court did not commit clear error in finding that the movant was not likely to succeed on the merits at trial. 970 F.2d at 882, 23 USPQ2d at 1622.

Arguably, our cases suggest that a district court must always consider all four factors when deciding whether to issue a preliminary injunction. *E.g., Illinois Tool Works, Inc. v. Grip–Pak, Inc.,* 906 F.2d 679, 681, 15 USPQ2d 1307, 1309 (Fed.Cir.1990) ("[t]hose factors and circumstances tend to overlap, but none may be ignored"); *Hybritech,* 849 F.2d at 1451, 7 USPQ2d at 1195 ("the district court must weigh and measure each factor against the other factors"). In such cases,

the district court did consider all four factors. However, as *New England Braiding* indicates, a closer examination is required.

While a district court must consider all four factors before *granting* a preliminary injunction to determine whether the moving party has carried its burden of establishing each of the four, we specifically decline today to require a district court to articulate findings on the third and fourth factors when the court *denies* a preliminary injunction because a party fails to establish *either* of the two critical factors. *See T.J. Smith and Nephew Ltd. v. Consolidated Med. Equip., Inc.,* 821 F.2d 646, 3 USPQ2d 1316 (Fed.Cir.1987) (affirming denial of preliminary injunction based on movant's failure to establish a reasonable likelihood of success *and* irreparable harm, even though district court did not address the other two factors).

#### (ii) Relationship to Presumption of Irreparable Harm

■ We recognize, of course, that a movant who clearly establishes the first factor receives the benefit of a presumption on the second. A strong showing of likelihood of success on the merits coupled with continuing infringement raises a presumption of irreparable harm to the patentee. *H.H. Robertson,* 820 F.2d at 390, 2 USPQ2d at 1929. However, the presumption does not necessarily or automatically override the evidence of record. It is rebuttable. *Rosemount, Inc. v. United States Int'l Trade Comm'n,* 910 F.2d 819, 822, 15 USPQ2d 1569, 1571–72 (Fed.Cir.1990). Like many other factual presumptions, it simply acts here as a procedural device which shifts the ultimate burden of production on the question of irreparable harm onto the alleged infringer. *Roper Corp. v. Litton Sys., Inc.,* 757 F.2d 1266, 1272, 225 USPQ 345, 349 (Fed.Cir.1985).

■ Although a district court may properly deny a motion for preliminary injunction simply based on the movant's failure to establish a reasonable likelihood of success on the merits, a movant's right, upon establishing such a likelihood along with continuing

infringement, to the benefit of a presumption of irreparable harm, makes the present case problematic. Here, the district court denied Reebok's motion for a preliminary injunction based on Reebok's failure to establish irreparable harm without addressing the other three factors. This approach improperly places the burden of establishing irreparable harm on the movant without first determining whether the movant is entitled to a presumption of irreparable harm based on a strong likelihood of success on the merits. Thus, the district court committed legal error by placing the burden of establishing irreparable harm on Reebok without first determining Reebok's likelihood of success.

This is not to say, however, that a trial court, before denying a preliminary injunction motion, must always make a finding on a movant's likelihood of success to avoid vacatur, no matter what the evidence regarding irreparable harm. Although such an approach is preferable for reasons of judicial economy and greatly aids appellate review, an alternative analysis is permissible. We hold the district court may find that, even giving movant the benefit of the presumption of irreparable harm, the non-moving party has presented evidence sufficient to rebut the presumption. In such a case, the movant has not established irreparable harm and is not entitled to a preliminary injunction.

 District judges are overburdened and need flexibility to operate efficiently. They deserve tolerance by reviewing courts so they can tailor procedures of adjudication to the case at hand. We do hold, however, that if, in adjudicating irreparable harm, the district court has declined to make findings on likelihood of success, the court must give the movant the benefit of the presumption before denying a motion requesting a preliminary injunction.

In this appeal then, the district court's denial of Reebok's motion for a preliminary injunction can be affirmed only if Baker has produced sufficient evidence to rebut the presumption of irreparable harm. On appeal we must afford Reebok the benefit of the

presumption since the trial court denied Reebok the opportunity to earn it. We look therefore to evidence of what actual damage was likely due to any continuation of Baker's alleged infringing sales and whether money damages will provide adequate compensation and vindication of Reebok's patent rights.

### B. Irreparable Harm: Proof and Presumption

 The patent statute provides injunctive relief to preserve the legal interests of the parties against future infringement which may have market effects never fully compensable in money. *Hybritech*, 849 F.2d at 1457, 7 USPQ2d at 1200. Because the principal value of a patent is its statutory right to exclude, the nature of the patent grant weighs against holding that monetary damages will always suffice to make the patentee whole. *Id.*, 849 F.2d at 1200, 7 USPQ2d at 1200.

### (i) Harm to Reebok's Reputation

 Reebok has not shown, however, that even if it receives the benefit of the presumption of irreparable harm, the district court abused its discretion by denying the preliminary injunction. Reebok submitted the declarations of its in-house patent counsel and its vice-president, each of whom asserted that Baker's sale of infringing footwear will cause irreparable injury to Reebok's reputation because the public might mistakenly believe the inferior quality Olympian shoe to be a Reebok product. To support this assertion, Reebok insisted that the SHAQ I shoe is still being sold in retail outlets, but provided no evidence on the extent of such sales. In fact, at the hearing before the district court, Reebok admitted that it did not have any sense of how many SHAQ I shoes were still available in the retail market. Therefore, the district court's implied finding that Reebok failed to prove the number was more than de minimis is not clearly erroneous. Although it made no explicit finding, we may affirm implied findings that are supported by adequate evidence.

*ACS Hosp. Sys., Inc. v. Montefiore Hosp.,* 732 F.2d 1572, 1578, 221 USPQ 929, 933 (Fed.Cir.1984) ("We examine the record in order to review the trial court's judgment, and the findings it made or necessarily had to have made to support that judgment. . . .").

In contrast, Baker presented sufficient evidence to rebut a presumption that Reebok would suffer harm that could not be fully compensated by money. Baker established, and the district court properly found, that Reebok no longer produces the SHAQ I shoe. In addition, Baker submitted the December 22, 1993, declaration of Daniel Berkowitz, Manager of Product Development for Baker, stating:

> Over the last month, I have visited numerous stores in the Boston area that sell Reebok athletic shoes. I found that those stores no longer carry the SHAQ I or had very few of the SHAQ I shoes in stock. . . . I also found that the large promotional displays for the SHAQ I (a life-size stand-up display of Shaquille O'Neal holding the SHAQ I shoe in his size) that used to appear at these stores were no longer being used. . . . I spoke with several sales clerks at these stores, and was told that the SHAQ I was no longer available and that the SHAQ II was the replacement model for the SHAQ I.

Reebok does not contest that very few SHAQ I shoes are available for sale or that Reebok no longer advertises that model.

▮ Harm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure. However, such confusion is unlikely to occur or may be de minimis once the patentee stops making and advertising its product embodying the patent and its distributors have nearly ceased selling any. Future purchasers of Baker's Olympian model shoe would not likely confuse that shoe with the SHAQ I model based on advertising or displays of the SHAQ I in retail stores because Reebok and its distributors, some time before the ruling appealed, stopped all advertising and ceased selling that model to beyond a de minimus extent. Moreover, Reebok has not explained how such confusion could occur. Thus, we conclude Baker has shown that Reebok's reputation will not be materially harmed by the sale of a relatively small number of Olympian shoes and, therefore, effects of Baker's sales of the remaining Olympians would be fully compensable by money damages. The district court's finding of no irreparable harm is not clearly erroneous.[3]

### (ii) Other Arguments

Reebok also argues that its right to exclude establishes irreparable harm because it will forever lose that right for the current time period if Baker is not excluded from the marketplace through a preliminary injunction. We reject this argument. "Application of a concept that *every* patentee is *always* irreparably harmed by an alleged infringer's pretrial sales would . . . disserve the patent system." *Illinois Tool Works,* 906 F.2d at 683, 15 USPQ2d at 1310 (emphasis in original). In *Illinois Tool* we rejected the patentee's argument that potential lost sales alone could demonstrate "manifest irreparable harm" because acceptance of that position would require a finding of irreparable harm to every patentee, regardless of the circumstances. *Id.,* 906 F.2d at 683, 15 USPQ2d at 1310. *See also Rosemount,* 910 F.2d at 822, 15 USPQ2d at 1572 (rejecting the argument that the presumption of irreparable harm can be overcome only by evidence that the accused product is no longer being imported, but not by evidence of the actual damage caused). Moreover, if the right to exclude during the litigation period alone established irreparable harm, the presumption of irreparable harm stemming from a finding of likely

---

3. For other cases in which we have concluded that even if a movant were entitled to a presumption of irreparable harm, that harm had been rebutted, *see Illinois Tool Works, Inc.,* 906 F.2d at 682, 15 USPQ2d at 1310; *T.J. Smith and Nephew Ltd.,* 821 F.2d at 648, 3 USPQ2d at 1318.

success could never be rebutted, for every patentee whose motion for a preliminary injunction is denied loses the right to exclude an accused infringer from the market place pending the trial.

For these reasons, we conclude the district court properly found that any harm which Reebok suffers due to Baker's selling the remaining 33,000 Olympian shoes can be fully compensated by money damages. Even granting Reebok the presumption of irreparable harm, it has been successfully rebutted.

## CONCLUSION

The district court did not commit clear error by finding that Reebok will not suffer irreparable harm from the denial of its motion for a preliminary injunction. This is so even with our presuming irreparable harm since the trial court failed to make findings on likelihood of success, which could have raised such a presumption. Although the district court erred in *neither* finding facts on likelihood of success nor, in the alternative, giving Reebok the benefit of the presumption, on this record the error was harmless. Baker's rebuttal evidence was sufficient to prevent the court's finding from being clear error. Therefore, despite its legal error, the district court did not abuse its discretion in denying the motion for the error was harmless. Its decision therefore must be and is

*AFFIRMED.*