QUICKIE MANUFACTURING
CORPORATION,
Plaintiff,

v.

The LIBMAN COMPANY, Defendant.

No. CIV. A. 01–4971(JEI).

United States District Court,
D. New Jersey.

Jan. 22, 2002.

Hollstein Keating Cattel Johnson & Goldstein, P.C. by Stuart M. Goldstein, Marlton, NJ, for Plaintiff.

Sterns & Weinroth, P.C. by Karen A. Confoy, Trenton, NJ, for Defendant.

Marshall, Gerstein & Borun by Richard M. LaBarge, Chicago, IL, Of Counsel for Defendant.

## OPINION

IRENAS, District Judge.

Presently before the Court is Plaintiff Quickie Manufacturing Corporation's Motion for a Preliminary Injunction. The Quickie Manufacturing Corporation (hereinafter "Quickie"), a producer of household and industrial cleaning products, is the assignee of United States Patent No. RE 37,415 (hereinafter "the '415 patent"), entitled "Cam Actuated Roller Mop with Scrubber Attachment". Quickie contends that a competing mop produced by the Defendant, the Libman Company (hereinafter "Libman"), the "Nitty Gritty Roller Mop", infringes on the claims asserted in the '415 patent. With the instant motion, Quickie seeks a preliminary injunction of Libman's alleged infringement of the '415 patent. As discussed below, because Quickie has not made the required "clear showing" that the '415 patent is being infringed, its motion will be denied.

### I.

The Quickie Manufacturing Company and the Libman Company are, as mentioned, businesses engaged in the production of household and industrial cleaning instruments such as mops, brushes and brooms. In June 1997, Quickie filed two provisional patent applications with the United States Patent and Trademark Office (hereinafter "USPTO"). These applications, filed in the name of Robert Petner, one of Quickie's engineers, were entitled "Roller Mop Having Integral Head with Convertible Scrubber", S.N. 60/048,599, and "Cam Actuated Roller Mop", S.N. 60/051,003. On March 31, 1998, Quickie filed a utility patent application, S.N. 09/050,895, entitled "Cam

Actuated Roller Mop with Scrubber Attachment." On December 14, 1999, Quickie was issued a patent for this mop, U.S. Pat. No. 6,000,087 (hereinafter "the '087 patent").

On May 17, 2000, allegedly in response to a Libman mop that was "strikingly similar" to the mop disclosed in the '087 patent, Quickie filed a reissue application, S.N. 09/595,559, with the USPTO. After an interview and subsequent amendment, the '415 patent, the contents of which are at issue in this case, was issued on October 23, 2001.

Quickie contends that the mop disclosed in the '415 patent is infringed by Libman's "Nitty Gritty Roller Mop." In a letter dated October 24, 2001, Quickie made its position known to Libman and, on October 25, 2001, filed a Complaint with this Court seeking damages and a permanent injunction of further infringement of the '415 patent. On November 14, 2001, Quickie filed the instant motion, seeking a preliminary injunction of Libman's alleged infringement of Quickie's patent. Libman answered on December 6, 2001 and asserted a counterclaim for a declaration that the '415 patent is invalid as anticipated by prior art. Oral argument on the instant motion was held on January 9, 2002.

This Court has jurisdiction pursuant to 28 U.S.C. § 1338.

## II.

As noted, the '415 patent discloses and claims a "cam actuated" roller mop with a scrubber attachment, designed for cleaning and scrubbing floors and similar surfaces. While roller mops have been in use for many years, Quickie contends that prior to the invention of the mop contained in the '415 patent, no mop had "effectively and efficiently managed to support an abrasive scrubbing surface for efficient use in combination with the roller features of the mop." (Def. Br. at 2). To this end, the '415 patent discloses a mop containing a deformable, water-absorbent sponge secured to the end of a longitudinally extending handle and on which a removable mop scrubber attachment with an abrasive scrubbing surface (such as "coiled, spiraled or tufted nylon") can be mounted. The mop's sponge is deformed by means of two "spaced apart roller members" (see Fig. 1 of '415 patent), each of which contains a separate, transversely-extending axis and which rotate independently of one another. These roller members are supported by a frame which is located at the sponge end of the mop handle. Extending from the frame up the mop handle (toward the user) is a "sleeve means", which is "of generally cylindrical configuration" and fully encases the lower portion of the handle up to its midpoint. Adjacent to the sleeve means, at about the midpoint of the mop's elongated handle, is a lever assembly containing a camming wheel "pivotally" secured to the mop handle (see '415 patent, Figs. 1, 15–23). When a user desires to wring out the mop's sponge, he or she pushes a handhold located on the lever assembly, thereby rotating the camming wheel around the pivot on the mop handle. According to Quickie's description, this rotation "urges" the sleeve and frame toward the end of the mop, moving the rollers over the sponge and squeezing the water therefrom. (See Pl. Br. at 5). If a user so desires, the mop's scrubber attachment can be mounted into a slot located on one surface of the frame supporting the mop's roller means. According to Quickie, the location of the scrubber attachment—mounted on the frame supporting the rollers, rather than on the rollers themselves—is one of the novel developments of the '415 patent. (See Pl. Reply at 12).

## III.

 Courts having jurisdiction of patent cases "may grant injunctions in accordance

with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. The Court of Appeals for the Federal Circuit has noted that "the standards applied to the grant of preliminary injunctions are the same in patent cases as in other areas of the law. . . ." *High Tech Medical Instrumentation, Inc. v. New Image Indus., Inc.,* 49 F.3d 1551, 1554 (Fed.Cir.1995). Thus, a party seeking a preliminary injunction must demonstrate: (1) a reasonable likelihood of success on the merits; (2) irreparable harm if the injunction is not issued; (3) a balance of hardships in favor of the moving party; and (4) that the public interest favors the issuance of the preliminary injunction. *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.,* 239 F.3d 1343, 1350 (Fed.Cir.2001) (citing *Reebok Int'l Ltd. v. J. Baker, Inc.* 32 F.3d 1552, 1555 (Fed.Cir.1994)). Although a court must consider all four factors before granting a preliminary injunction, *see Reebok Int'l,* 32 F.3d at 1556, the Federal Circuit has made it clear that *both* a likelihood of success on the merits and irreparable harm must be established before a preliminary injunction may issue, *see Amazon.com,* 239 F.3d at 1350 ("Our case law and logic both require that a movant cannot be granted a preliminary injunction unless it establishes both of the first two factors . . ."), and that findings as to all four factors are not necessary where a failure to show a likelihood of success or irreparable harm compels a denial of the requested injunction, *see Texas Instruments, Inc. v. Tessera, Inc.,* 231 F.3d 1325, 1329 (Fed.Cir.2000); *Polymer Tech., Inc. v. Bridwell,* 103 F.3d 970, 973 (Fed.Cir.1996); *Reebok Int'l,* 32 F.3d at 1555 ("[T]he district court may deny a preliminary injunction based on the movant's failure to establish either of these two crucial factors without making addi-

tional findings respecting the other factors.").

In order to establish a likelihood of success on the merits, a movant must make a "clear showing" that the patent at issue is both valid and infringed by the accused device. *See Atlas Powder Co. v. Ireco Chemicals,* 773 F.2d 1230, 1233 (Fed. Cir.1985); *see also, Amazon.com,* at 1359; *Nutrition 21 v. United States,* 930 F.2d 867, 870 (Fed.Cir.1991) (quoting *Atlas Powder*). If a patentee succeeds in making a strong showing of validity and infringement, a presumption of irreparable harm is raised. *See Purdue Pharma L.P. v. Boehringer Ingelheim GmbH,* 237 F.3d 1359, 1363 (Fed.Cir.2001); *Reebok Int'l,* 32 F.3d at 1556 ("A strong showing of likelihood of success on the merits coupled with continuing infringement raises a presumption of irreparable harm to the patentee."). For that reason, likelihood of success on the merits is often the primary issue in motion for a preliminary injunction of alleged patent infringement. Accordingly, it is an essential element of Quickie's motion that it carry its burden of demonstrating a likelihood of success on its claim that Libman's Nitty Gritty mop infringes on the '415 patent.

## IV.

Generally, determination of the infringement of a patent is a two-step inquiry: first, the claims in the patent at issue must be construed to determine their scope and meaning; second, a comparison must be made between those claims as properly construed and the allegedly infringing device or process. *See Seal–Flex, Inc. v. Athletic Track and Court Construction,* 172 F.3d 836, 842 (Fed.Cir.1999); *Mas–Hamilton Group v. LaGard, Inc.,* 156 F.3d 1206, 1211 (Fed.Cir.1998); *see also, generally,* 5A Donald S. Chisum, *Chisum on Patents,* § 18.03 (2001). In order

for infringement to be proved, it must be shown that the infringing device contains or "reads on" each and every limitation disclosed in a given patent claim. *See Mas–Hamilton,* 156 F.3d at 1211 ("To prove literal infringement, the patentee must show that the accused device contains every limitation in the asserted claims."); *Amhil Enters. v. Wawa, Inc.,* 81 F.3d 1554, 1562 (Fed.Cir.1996).[1]

■ Although claims must be construed to determine infringement, a court need not arrive at a final and conclusive claim construction in deciding a motion for a preliminary injunction, *see Sofamor Danek Group, Inc. v. DePuy–Motech, Inc.,* 74 F.3d 1216, 1221 (Fed.Cir.1996), and the court's findings and conclusions regarding claim construction are not binding at trial, *see Illinois Tool Works, Inc. v. Grip–Pak, Inc.,* 906 F.2d 679, 681 (Fed.Cir.1990). In sum, the court's obligation at the preliminary injunction stage is only to determine the probability that infringement can be proved after a full presentation of the evidence at trial. *See Atari Games Corp. v. Nintendo of America, Inc.,* 897 F.2d 1572, 1575 (Fed.Cir.1990); *Dentsply Int'l, Inc. v. Great White, Inc.,* 132 F.Supp.2d 310, 315 (M.D.Pa.2000).

The '415 patent contains forty-two claims, ten of which are independent. Quickie contends that Libman's Nitty Gritty mop infringes on claims 19 and 30–42 of its patent. (*See* Pl. Br. at 14). Although Quickie contends that there are a number of patentable features disclosed by the '415 patent, it has emphasized that the innovation targeted by the claims allegedly infringed by Libman is the attachment of an abrasive scrubber element to the mop's frame "independently of the roller means." Nevertheless, as noted, in order to prove infringement, Quickie must demonstrate that the Nitty Gritty mop possesses every limitation disclosed by the relevant claims of the '415 patent, not just those which the patentee believes to be the focus of its claims.

Each of the claims at issue in this case contains a number of limitations directed at the mechanism described in the '415 patent for squeezing liquid from the mop's deformable sponge member. Libman contends that because its product employs a "traditional rod and lever" wringing mechanism, rather than the sleeve-oriented structure found in the '415 patent, its mop does not infringe on the claims of the Quickie patent.

As noted, the central feature of the wringing mechanism disclosed by the '415 patent is a "sleeve means" mounted "slidably" about an elongated handle. On the other hand, Libman's Nitty Gritty mop employs, as noted, a lever and rod wringing mechanism. In this configuration, the mop's sponge member is affixed to the end of a thin metal rod and is located at one end of an elongated handle. However, unlike in the Quickie model, the sponge member is not secured to the end of the mop's handle, but instead "hangs" at the end of the metal rod. This rod then runs from the sponge, along the mop's handle, and connects to a lever located approximately midway along the length of the handle. This lever is fixed perpendicularly to the handle at its midpoint, so that it may be moved both toward and away from the sponge member. At one end of the handle is fixed a "frame means" which supports two spaced-apart roller means. When the user pushes the upper end of the lever toward the sponge member, the

1. Quickie's claim of infringement is for literal infringement. Infringement under the doc- trine of equivalents is not asserted.

lower end of the lever, to which is attached one end of the metal rod, is moved away from the roller means, thus drawing the sponge member toward the user and through the roller means.

### A.

■ As Quickie quite properly notes, the relevant comparison in an infringement determination is not of the features of the accused device and the patented product, but is instead of the accused device with the claims of the patent at issue. (*See* Pl. Br. at 14, *citing Glaxo, Inc. v. TorPharm, Inc.,* 153 F.3d 1366 (Fed.Cir. 1998)). Each of claims 30–42 contains a limitation providing for a "manually operated means positioned on the handle ... *for moving said dual roller means* ... and deforming said cleaning member therebetween [sic]." [2] The use of the phrase "means for" in these claims, along with the recitation of a corresponding function, invokes the specific analytical framework created by 35 U.S.C. § 112, ¶ 6, which provides that

> [a]n element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material or acts described in the specification and equivalents thereof.

*Id.*

■ Thus, this "means-plus-function" format permits recitation of "a function to be performed rather than definite structure or materials for performing that function," *Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.,* 145 F.3d 1303, 1307 (Fed.Cir.1998). In order for a means-plus-function element to be infringed, the accused device must perform the identical function recited in the patent claim and must do so using a physical structure identical or equivalent to that employed by the patented device. *See*

---

2. Claim 30 discloses, in full:

A mop comprising:

(a) a longitudinally elongated handle;

(b) a deformable cleaning member connected to said handle, said cleaning member comprising dual exterior surfaces which in part define the shape of the cleaning member;

(c) *dual spaced apart roller means,* each of the roller means comprising a transverse axis;

(d) manually operated means positioned on the handle for moving said dual roller means in tandem over the cleaning means and deforming said cleaning member therebetween [sic], whereby on of said dual roller means is configured to move only over one of the dual exterior surfaces and the other of said dual roller means is configured to move only over the other of the dual exterior surfaces;

(e) frame means which supports and maintains the dual roller means on the handle in spaced relation to the handle, both of the dual roller means being fixedly connected in position on the frame means, whereby when the dual roller means are moved and the cleaning member is deformed therebetween [sic], the distance between the axis of each dual roller means at all times remains unchanged;

(f) a separate mop attachment piece comprising a planar support panel on which an abrasive surface means is located; and

(g) slot means for accepting and securing the attachment piece on the frame means and for at all times maintaining the abrasive surface means in a fixed position in relation to the frame means.

Claims 31–35 and 40–42 contain, either expressly or by reference, a limitation virtually identical to claim 30(d). The relevant language of claims 36–39 is slightly different. Those claims reveal: "(d) manually operated means positioned on the handle for moving said dual roller means and deforming said cleaning member therebetween [sic]." Thus, while claims 31–35 and 40–42 disclose a means "for moving" the roller means "over" the sponge member, the means disclosed in claims 36–39 is simply "for moving" the roller means.

*Kemco Sales v. Control Papers Co.*, 208 F.3d 1352, 1364 (Fed.Cir.2000); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed.Cir.1999); *Chiuminatta*, 145 F.3d at 1308; *Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 934 (Fed.Cir. 1987) (en banc). The first step in the infringement analysis of a claim containing a mean-plus-function limitation is therefore a determination of whether the accused device performs a function identical to that recited in the claim. *See* 5A *Chisum on Patents*, § 18.03[5][c][i]; *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed.Cir.1999) ("[F]unctional identity and either structural identity or equivalence are both required."); *Pennwalt* 833 F.2d at 934 ("If the required function is not performed *exactly* in the accused device, it must be borne in mind that section 112, paragraph 6, equivalency is not involved.").

With regard to claims 30–42, Libman contends that the function recited in the relevant portions of those claims, "moving the roller means", is not accomplished by any structure employed by its mop and that there can therefore be no infringement of those claims:

> [f]or each of these claims, the function of the "means" is expressly stated. It is *for moving* the rollers. Quickie contends that the conventional lever-and-rod wringing mechanism on the Nitty Gritty mop performs that function of the recited "manually operated" means. However, the mechanism on the Libman mop only enables a user to move *the sponge;* it is absolutely incapable of moving the rollers.

(Def. Br. at 7) (emphasis in original). Quickie contends, however, that Libman misinterprets its use of the word "moving": "when the manually operated means is moved down the handle, this causes the roller means not only to move toward the cleaning member of the mop, but also causes the roller means to rotate, i.e. move over the cleaning member of the mop." (Pl. Reply at 8). Thus, Quickie suggests that the Nitty Gritty mop does read on limitation (d) of claims 30–42 as "moving" should be understood as synonymous with "rotating", a function clearly performed in both devices at issue.

The meaning of a patent claim "derives from the context in which patent claim language is used." 5A *Chisum on Patents*, § 18.03[2]. "The proper construction of claims is based upon the claim language, the written description portion of the specification, the prosecution history, and if necessary to aid the court's understanding of the patent, extrinsic evidence." *Gentry Gallery v. Berkline Corp.*, 134 F.3d 1473, 1476 (Fed. Cir.1998). Here, however, both parties appear to believe that the disputed limitations of claims 30–42 can be given their proper construction without reference to any context other than "the plain and clear language" of the claims themselves and therefore offer little discussion beyond conclusory statements of their competing interpretations of the word "moving". Careful consideration of the language at issue, however, reveals no such clarity.

Of course, the starting point for the construction of any patent claim is the language of the claim itself. *See CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co.*, 224 F.3d 1308, 1316 (Fed. Cir.2000) ("Claim construction starts with the language of the claim itself."); *Optical Disc Corp. v. Del Mar Avionics*, 208 F.3d 1324, 1334 (Fed.Cir.2000). A consideration of the language of Quickie's claims appears to support Libman's proffered interpretation. The phrase "for moving" is used throughout the '415 patent to describe linear movement of the various parts of the Quickie product. For instance, claims 13 and 19 disclose manually operated means

"for moving" the mop's cleaning member through the rollers. (*See* '415 patent, col. 10, lines 6–7, 55–56). Clearly, use of the phrase in those claims is not intended to indicate rotation of the cleaning member through the rollers, as such movement is not physically possible. As described below, nowhere in the language of the patent is there any evidence that Quickie intended to give a different meaning to the term in claims 30–42.

■ The author of a patent claim is entitled to define the terms used as he or she desires and the Court must look beyond the claim language to determine if the patentee has done so. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir.1996) ("Although words in a claim are generally given their ordinary and customary meaning, a patentee may choose to be his own lexicographer....."). In this case, however, evidence gleaned from the patent's specification and prosecution history supports the "ordinary" construction suggested by Libman.

While the patent's specification sheds little light on the proper construction of subsection (d) of claims 30–42, a review of statements made throughout the prosecution of the '415 patent reveals further evidence indicating that the phrase "for moving the rollers" should be construed to refer to the linear movement of the rollers, frame and sleeve means toward the sponge rather than to the rotation of the roller members over the sponge surface.

On October 3, 2000, the USPTO engaged in an office action in which it rejected several of Quickie's proposed claims, including those at issue here, as being anticipated by a patent, No. 377,955, issued to one A.W. O'Blenus in 1888. In rejecting Quickie's claims, the USPTO noted that O'Blenus "discloses a manually operated means," which read on, and thus anticipated, claims in the '415 patent. (*See*

Office Action Summ., attached as Ex. 10 to LaBarge Affidavit). In response, Quickie made several changes to the language of its claims and made several comments to the USPTO clarifying the meaning of the terms it used. For instance, Quickie amended claim 30 by adding language noting that the roller means on its mop move "in tandem over the cleaning means." (*See* "Amendment Following First Office Action", 10/20/2000, Ex. 11 to LaBarge Aff., at 3). Quickie explained this change to the Patent Office by noting that "[f]urther, and fundamentally, the cleaning member of O'Blenus is configured to be moved over and through its rollers. The subject invention *specifically recites* movement of the rollers over the cleaning member." (*Id.* at 9)(emphasis added). An examination of claim 30 reveals, without question, that this specific recitation is accomplished through the use of the language currently at issue. Further, Quickie amended claim 36 to include a reference to the manually operated means for moving the roller means and clarified this amendment by stating that "claim 36 as amended, now also recites that the dual roller means [sic] over the cleaning member, again as opposed to O'Blenus in which the cleaning member is moved in relation to the roller means." (Id. at 9–10).

■ The Federal Circuit has recognized that "through statements made during prosecution or reexamination an applicant for a patent or a patent owner ... may commit to a particular meaning for a patent term, which meaning is then binding in litigation." *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1158 (Fed.Cir. 1997). The statements and amendments referred to above demonstrate that, in using the phrase "manually operated means ... for moving," and in emphasizing the manner in which that language distinguished its claims from that of prior art,

Quickie intended to refer to the movement of the roller means, along with the frame and sleeve means, in a linear fashion toward and over the mop's sponge member.

■ Finally, there is an additional reason supporting the adoption of Libman's proffered interpretation. In a number of cases, the Federal Circuit has stated that where the language of a patent claim is so ambiguous as to support equally two differing interpretations, and resort to other intrinsic and extrinsic evidence does not resolve the confusion, a court should adopt the narrower of the suggested interpretations. *See Ethicon Endo–Surgery, Inc. v. United States Surgical Corp.*, 93 F.3d 1572, 1581 (Fed.Cir.1996); *Athletic Alternatives, Inc. v. Prince Manufacturing*, 73 F.3d 1573, 1581 (Fed.Cir.1996). Quickie apparently recognizes, in its Reply and Supplemental Response, that the language at issue in claims 30–42 is subject to two competing interpretations: "the within specification of the '415 Patent itself clearly supports the interpretation of the claim language, which recites that the manually operated means causes the roller means *not only to move toward the cleaning member* ... but also causes the roller means to rotate." (Def. Supp. Response, at 4)(emphasis added). Thus, even when viewed in the light most favorable to Quickie, the language at issue is subject to two valid interpretations. As noted, Quickie does not point to any language in the specification that demonstrates that its proffered interpretation should be chosen over any other. That being the case, the Court views the Federal Circuit's admonition that ambiguous claims should be construed against the drafter as further supporting an adoption of Libman's suggested construction.

■ Given the above conclusion, Libman's mop should be deemed to infringe on claims 30–42 only if it contains some structure that moves the mop's roller means in the linear fashion described in Quickie's claims. An examination of the Nitty Gritty mop reveals that there is no structure that performs this function as, as Libman points out, the roller means on the Libman mop are fixed to the mop handle and do not move. Indeed, the wringing mechanism on the Libman mop is very similar to that disclosed on the O'Blenus mop and which was distinguished by Quickie as containing immovable roller means. Accordingly, Quickie cannot be adjudged to have sustained its burden of demonstrating a reasonable likelihood of success in proving infringement of claims 30–42.

**B.**

With regard to Quickie's claim of infringement of claim 19, much is made by the parties of the distinction between moving the mop's roller means over the sponge and pulling the sponge through the roller means. Libman contends that because its product deforms its cleaning member by pulling it through the roller means, while the Quickie product achieves the same result by pushing the roller means over the sponge member, the wringing structures are not equivalent and there can therefore be no infringement of any claim containing a reference to such structures.

Claim 19 of the '415 patent requires a "manually operated means positioned on the handle for moving said cleaning member between said roller means and deforming said cleaning member therebetween [sic]." [3] This limitation is in means-plus-

**3.** Claim 19 reads, in full:
A mop comprising:
(a) a longitudinally elongated handle;
(b) a deformable cleaning member connected to said handle;
(c) spaced apart roller means

function form. Libman concedes that its mop performs the recited function of moving the sponge member between the rollers, but contends that it accomplishes this function using a lever and rod system that is neither identical to nor an equivalent of the Quickie mechanism. (Def. Br. at 8–10).

"The means term in a means-plus-function limitation is essentially a generic reference for the corresponding structure disclosed in the specification." *Chiuminatta*, 145 F.3d at 1308. Thus, in order to determine whether an accused device reads on a means-plus-function limitation, a court must give specific meaning to the limitation's means term by identifying the physical structure described in the patent for performing the recited function. *See Kahn v. General Motors Corp.*, 135 F.3d 1472, 1476 (Fed.Cir.1998) ("Unlike the ordinary situation in which claims may not be limited by functions or elements disclosed in the specification, but not included in the claims themselves, in writing a claim in means-plus-function form, a party is limited to the corresponding structure disclosed in the specification and its equivalents."); *Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d at 934; *see also,*

(d) manually operated means positioned on the handle for moving said cleaning member between said roller means and deforming said cleaning member therebetween [sic]; [and]
(e) a mop attachment with abrasive surface means, said mop attachment being *removably* mounted independently of the roller means [and directly to the manually operated means];
(f) *means to connect the roller means in a fixed position on the mop, whereby when the cleaning member is moved between the roller means, the roller means at all times remains fixed in the same spatial in relation to the mop attachment means.*
(*See* '415 Patent, col. 10) (emphasis in original).

*generally,* 5A *Chisum* at § 18.03[5][d][ii]-[iv].

The '415 patent discloses two embodiments of the roller mop claimed therein. Although these embodiments differ somewhat, the structure disclosed for "moving said cleaning member between said roller means and deforming said cleaning member therebetween [sic]" is common to each embodiment.[4] The patent's specification states that:

as grip 30 of lever assembly 26 is moved forward, towards the cleaning end of the mop, in the direction of arrow F in FIG. 16, camming wheel 48 rotates around pivot 28 causing sleeve 36 to move roller segments 67, 68, and 69 of rollers 18 over sponge 17, squeezing water and dirt out of sponge 17, as described in the previous embodiment.

(*See* '415 patent, col 8, lines 49–55). The specification further reveals that "frame 14 includes elongated sleeve 36 positioned about the handle 12," that "sleeve 36 is of a generally cylindrical configuration and is slidable [sic] mounted in a position relative to handle 12," and that "sleeve 36 is integral with frame 14." (*See* '415 patent, col. 5, lines 4–6, 12–14; *see also,* Figs. 1, 13, 15, 17).

---

**4.** The Court is aware that it is improper to read a limitation onto a patent claim based on features of a preferred embodiment disclosed in the specification. *See, e.g., Burke, Inc. v. Bruno Independent Living Aids, Inc.,* 183 F.3d 1334, 1341 (Fed.Cir.1999); *Laitram Corp. v. Cambridge Wire Cloth Co.,* 863 F.2d 855, 865 (Fed.Cir.1988) ("References to a preferred embodiment, such as those often present in a specification, are not claim limitations."). In the specification of the '415 patent, although the "manually operated means" at issue is described most specifically in discussing one embodiment of Quickie's invention, the structure described is common to all embodiments of Quickie's roller mop and is a central feature of Quickie's patented invention.

The link between these structures and the function described in claim 19(d) is further illustrated by the patent's summary description, which provides that:

> "[t]he sponge mop roller squeeze feature is actuated by a cammed lever which is rotatably connected to the mop's handle and is positioned adjacent to a sleeve slidable mounted on the handle. At its lower end, the sleeve comprises the frame which carries the mop attachment and connects to the mop's rollers."

('415 patent, col. 2, lines 42–48).

Accordingly, the "manually operated means" provided for in claim 19(d) for "moving said cleaning member . . . and deforming said cleaning member" includes all of the following: a lever mechanism containing a camming wheel rotatably fixed to a handle, a sleeve means positioned about the handle which slides along the length of the handle, and a frame connected to the sleeve means and supporting a number of roller means.[5]

There is no question that Libman's rod and lever wringer is not identical to the lever/sleeve/frame assembly employed by Quickie. The issue, therefore, is whether the two structures are equivalents.

▪▪▪ Under § 112, ¶ 6, an accused device's structure should be deemed equivalent to that described by a patent only where the differences between the two are "insubstantial." *See Odetics*, 185 F.3d at 1267 ("Structural equivalence under § 112, ¶ 6 is met only if the differences are insubstantial."); *Seal–Flex*, 172 F.3d at 839 (jury properly instructed to apply test of whether accused material was "insubstantially different" from patented material); *Chiuminatta*, 145 F.3d at 1309 ("The proper test is whether the differences between the structure in the accused device and any disclosed in the specification are insubstantial."). A structure is deemed an equivalent if it "results from an insubstantial change which, from the perspective of one of ordinary skill in the art, adds nothing of significance to the claimed invention." *Valmont Indus., Inc. v. Reinke Mfg. Co., Inc.*, 983 F.2d 1039, 1043 (Fed. Cir.1993). The Federal Circuit has noted that structural equivalence under § 112, ¶ 6 can be determined using a modified version of the "function-way-result" analysis applied in doctrine of equivalents cases.[6] Accordingly, given that literal infringement may be proved only where there is an identity of function in the claims of a patent and an accused device, structural equivalence under § 112, ¶ 6 should be found if the structures at issue "perform the identical function, in substantially the same way, with substantially the same result." *Kemco Sales*, 208 F.3d at 1364; *Odetics*, at 1267 ("The content of the test for insubstantial differences under § 112, ¶ 6 thus reduces to 'way' and 'result' ".).

▪▪▪ In arguing against a finding of structural equivalence, Libman asserts that "using a traditional rod-and-lever mechanism to pull the sponge upwardly wrings the mop in a different way than the sleeve mechanism taught in Quickie's patent. Causing the wringing to occur at a different, higher location is a different re-

---

**5.** At oral argument, Quickie appeared to agree that the "manually operated means" referred to the '415 patent referred to the entire camming wheel/sleeve means/frame/roller means assembly.

**6.** The doctrine of equivalents allows a patent holder to prevail on an infringement claim even where there is no literal infringement if the accused product "performs substantially the same function in substantially the same way to obtain the same result. . . ." 5A *Chisum on Patents*, § 18.04; *Warner–Jenkinson Co. v. Hilton Davis Chemical*, 520 U.S. 17, 21, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997).

sult." (Def. Br. at 9). While Libman does indeed point to a difference between the competing devices, its argument overstates the magnitude of this difference. Although the product taught in Quickie's patent can, in conventional terms, unlike the Libman product, move its roller means, this difference does not appear to be as significant as Libman suggests.

The two devices at issue both use simple levers to draw a sponge through a pair of fixed rollers. A lever is "a rigid piece that transmits and modifies force or motion when forces are applied two points and it turns about a third." *Webster's Third New Int'l Dictionary* 1300 (1993). In each of the devices at issue, a lever is attached to the mop's elongated handle at a fixed point and is movable about that point. In the Libman product, the lever is fixed perpendicularly to the handle at its midpoint and has the metal rod securing the sponge attached, on the underside of the mop, to its lower end. Application of force to the top of the lever in the direction of the mop's sponge and rollers moves the lever about the point fixed on the mop's handle, forcing the lower end of the lever away from the sponge and frame, thus drawing the sponge member through the roller means. The Quickie product, while differing aesthetically and perhaps conceptually, functions in substantially the same manner. The essential difference appears to be that the '415 patent has done away with the additional metal rod found on the Libman product and has instead merged the rod's function into that of the mop

handle. Thus, while the point fixing the lever to the mop handle acts as the fulcrum on the Libman product, it is the point at which the camming wheel contacts the sleeve means which acts as the fulcrum in the Quickie device. Applying force to the top of the lever thus moves the lever about the point at which the lever contacts the sleeve means, thus forcing the sponge through the roller means. In this configuration, movement of the sponge through the rollers or the rollers over the sponge is merely a matter of perception. If the user of the mop maintains the mop handle in a fixed position, operation of the lever will force the mop's sleeve means to move. However, if the user maintains the sleeve means in a fixed position (which is quite easy to do), the sleeve itself acts as the fulcrum, and the mop handle will move and draw the sponge through the rollers in almost identical fashion as in the Libman product. In this way, the two structures operate in a substantially similar manner. Accordingly, they appear to be equivalents under § 112, ¶ 6.[7]

However, as noted above, a court's findings in determining whether to issue a preliminary injunction are not binding on it at trial. Because a full evidentiary presentation has not been made in connection with the instant motion, the parties will be free at trial to offer any additional evidence relevant to the court's determination of whether the differences between the two structures discussed above are, when viewed from the perspective of a person of

---

7. The Court is aware that a finding of insubstantial difference may raise issues relating to the obviousness and novelty of the improvements allegedly achieved by the Quickie patent and, consequently, the validity of that patent. Further, the Court recognizes that there are issues in this case relating to the novelty and obviousness of mounting a scrubber attachment on the roller frame of a roller mop, rather than on the rollers themselves.

However, because the Court believes that Quickie's motion should be denied because of its inability to demonstrate a likelihood of success on its claims of infringement, *see* below, and because there is a dearth of evidence relating to the state of prior art and the obviousness of Quickie's modifications to one of ordinary skill in the art, the Court need not reach these validity issues in deciding the instant motion.

ordinary skill in the art, more substantial than they appear to be at this juncture. However, after a consideration of the evidence currently before it, the Court believes that the manually operated means employed by the roller mops at issue in this case for moving a deformable sponge member through the product's roller means should be deemed structural equivalents and that, therefore, Quickie has demonstrated the requisite likelihood of success in proving that the Libman Nitty Gritty mop reads on that element of claim 19 of the '415 patent.

### C.

However, limitation (d) is not the only element of claim 19 of the '415 patent and, as mentioned, a patent claim can be deemed infringed only if the accused device reads on each and every limitation recited in the claim. Claim 19 (as well as each of claims 30–42) contains a limitation disclosing "a deformable cleaning member connected to said handle."[8] In its brief, Libman argues that this limitation is not present in its product: "claim 19 also requires that the sponge *be connected to the handle*. On the Nitty Gritty mop, it is connected to what Quickie says is the 'manually operated means', *not* to the handle." (Def. Br. at 10, n. 5 (emphasis in original)). Quickie responds to this argument by stating that "contrary to Libman's assertion ... both sponge cleaning members are connected to the mop handle. The Quickie sponge is connected directly to the end of the handle. The Libman sponge is connected to its mop handle, as it is interconnected with the manually operated handle or lever which is secured directly to the mop handle." (Pl. Reply at 10). A comparison of this seemingly clear language with the features of the Libman product would appear to support Libman's

position, as an individual skilled in the relevant art viewing the Nitty Gritty mop is most likely to describe that mop's sponge member as being connected to the metal rod, not the mop's handle. *See Multiform Desiccants, Inc. v. Medzam, Ltd.,* 133 F.3d 1473, 1477 (Fed.Cir.1998) ("It is the person of ordinary skill in the field of the invention through whose eyes the claims are construed.").

However, a patentee is free, under the patent law, to define the manner in which he or she uses certain terms and a court seeking to construe those terms must generally look beyond the language of a claim in order to arrive at a proper construction. *See Vitronics Corp.,* 90 F.3d at 1582 ("Although words in a claim are generally given their ordinary and customary meaning ... it is always necessary to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning."); *see also, Markman v. Westview Instruments,* 52 F.3d 967, 979 (Fed.Cir.1995) (en banc) ("Claims must be read in light of the specification, of which they are a part ... [and] to construe claim language [a court] should also consider the patent's prosecution history, if it is in evidence.").

Consideration of the specification of the '415 patent reveals no specific definition of the phrase "connected to." What the specification does reveal, however, is that the affixation of a sponge member directly to the end of a mop's elongated handle is an essential component of the innovation disclosed by the '415 patent. As noted, Quickie's development of the "sleeve means" system for wringing water from the sponge of a roller mop is asserted as a "patentable" improvement over the wringing mechanisms available on prior roller mops. In designing the product disclosed

---

**8.** This description is recited in limitation (b) of each claim at issue.

in its patent, Quickie sought to change the way roller mops function in order to ease the burden on product users for whom it is difficult to draw a heavy, water-laden sponge through fixed roller members. (*See* '415 patent, Background, col. 1, lines 30–34). To this end, the '415 patent discloses a roller mop in which it is an integral element that the mop's sponge member be affixed directly to the end of the mop's elongated handle and the mop's roller means be mounted independently of that handle. Without this feature, the Quickie product could not function. Claim 1 of the '415 patent specifically discloses the sleeve means system created by Quickie and Robert Petner. That claim, like claims 19 and 30–42, contains a limitation providing for a deformable cleaning member connected to the mop handle. (*See* '415 patent, col. 9, lines 22–23). In order for the invention described in full in that claim to function, the sponge member must be affixed directly to the mop handle. If it is "connected" to the handle in the same manner as in the Libman product, the mop described therein simply will not function. As noted, a consideration of the remaining intrinsic evidence of the '415 patent does not reveal any evidence that the term as used in claim 1 differs in any way from that term as used in the remaining claims of the '415 patent. Accordingly, the Court views this as persuasive evidence that the term "connected" should be construed, as described above, as requiring a direct physical link between the mop handle and the mop's sponge member and that a mop in which the sponge member is not directly affixed to the end of the mop handle should not be interpreted as reading on the terms of the limitations of the '415 patent containing such a requirement.

Further, "in construing claims, the problem that the inventor was attempting to solve, as discerned from the specification and the prosecution history, is a relevant consideration." *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1160 (Fed.Cir. 1997). In designing the device ultimately disclosed in the '415 patent, Quickie sought to address the problem that "known roller sponge mops require some substantial force to draw the cleaning element between the rollers" and that "some persons, particularly small females and elderly persons, have difficulty performing this action due to limited hand and arm strength." (*See* '415 patent, col. 1, lines 30–34). In attempting to resolve this problem, Quickie designed a product that, as noted, allows a user to wring liquid from an absorbent sponge member by pushing a set of roller means over the sponge member, thus avoiding the additional weight of the liquid retained by the sponge. To move the rollers in this manner, the user·must, as mentioned, maintain the mop handle in a fixed position. In order for a roller mop to function, the mop's roller means and its sponge must function independently. In the case of the Quickie patent, this independence is impossible without a sponge member attached directly to the end of the mop's elongated handle. Accordingly, the Court believes that a consideration of the asserted work-saving purpose of the mop disclosed in the '415 patent counsels in favor of an interpretation that requires the mop's sponge member to be directly affixed to the end of the mop handle in order to be considered "connected to" that handle within the meaning of claims 19 and 30–42.

Therefore, based on the considerations recited above, the Court concludes, for the purposes of determining Quickie's likelihood of success on the merits on its claim of infringement, that, as described in the claims of Quickie's patent, a "deformable cleaning member" should be considered "connected to" the longitudinally extending handle of a roller mop only where that

cleaning member is directly affixed to that handle. An examination of the allegedly infringing Libman mop reveals that it does not fall within these claims as so construed. As discussed above, the sponge member on the Libman mop hangs from a separate metal rod and is moveable independently of the mop handle. In such a configuration, the sponge is not connected to the mop handle. Thus, Quickie cannot be deemed to have demonstrated the requisite likelihood of success in proving infringement of these claims. Therefore, because "a movant seeking a preliminary injunction must establish a reasonable likelihood of success on the merits both with respect to validity and infringement of its patent," *Reebok Int'l,* 32 F.3d at 1555–56, and because Quickie has not made this required showing, the instant motion for a preliminary injunction must be denied.

## V.

In light of its failure to make a strong showing of a likelihood of success on the merits, the scant evidence offered by Quickie in connection with its allegations of irreparable harm provides further support for the Court's determination that a preliminary injunction should not be issued in this case. "A strong showing of likelihood of success on the merits coupled with continuing infringement raises a presumption of irreparable harm to the patentee." *Id.* at 1556. Here, however, Quickie has not made the required showing of likelihood of success and therefore is not entitled to a presumption of irreparable harm. Stripped of this presumption, Quickie's speculative statements regarding potential loss of sales and good will as a result of Libman's alleged infringement (*see* Vosbikian Aff., attached as Ex. 4 to Pl. Br.) are insufficient to provide the required showing of irreparable harm. *See, e.g., Illinois Tool Works, Inc.,* 906 F.2d at 683 (potential lost sales alone insufficient

to demonstrate "manifest irreparable harm"). Although Quickie's failure to establish a reasonable likelihood of success at trial alone is a sufficient basis for the Court's denial of the requested preliminary injunction, Quickie's inability to provide any evidence of irreparable harm beyond the speculative statements referred to above provides further evidence of the inappropriateness of preliminary relief in this case.

A consideration of the balance of hardships in this case further supports the denial of the requested preliminary injunction. In contrast to Quickie's rather speculative statements supporting its contention of irreparable harm, Libman has offered specific evidence of the severe hardships it is likely to suffer should an injunction be issued prior to trial. Specifically, Libman has provided the Court with evidence of the substantial investments made in its Nitty Gritty product line subsequent to the issuance of Quickie's '087 patent (which Quickie has not claimed infringed). (*See* Aff. of Robert J. Libman, Ex. 4). Further, Libman asserts that a number of its contracts with large retail establishments are dependent on its ability to offer a roller mop product and that issuance of a preliminary injunction would likely precipitate layoffs of some 30 Libman employees. (*Id.* at ¶¶ 17–20) While it is true, as Quickie asserts, that Libman can continue to offer its roller mop without fear of infringement claims if it removes the scrubber attachment from its products, absent a stronger showing of likelihood of success than Quickie has made here, Libman should not be forced to choose between losing its major retail contracts and reconfiguring its entire roller mop product line, either of which is itself a significant hardship. Accordingly, the Court believes that the balance of hardships in this case militates against

issuance of the requested preliminary injunction.

## VI.

Therefore, because, as stated above, the Quickie Manufacturing Corporation has not offered sufficient evidence to demonstrate a reasonable likelihood that the Defendant's Nitty Gritty Roller Mop contains each and every limitation of the properly construed claims of the patent at issue, and because Quickie has not sufficiently proven irreparable harm and a balance of hardships weighing in its favor, the instant Motion for a Preliminary Injunction will be denied. Because Quickie's motion will be denied, issues relating to the validity of the '415 patent and to any intervening rights acquired by Libman as a result of its claimed non-infringement of the '087 patent need not be reached. The Court will enter an appropriate order.